UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL G. MAY,

    Plaintiff,

v.

CITIMORTGAGE, INC. and
ABN AMRO MORTGAGE GROUP, INC.,

    Defendants.

Case No. 12-14603
Honorable Laurie J. Michelson
Magistrate Judge Michael J. Hluchaniuk

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [29] AND DENYING PLAINTIFF'S MOTION TO AMEND [30]**

In 2003, Plaintiff Michael May and non-party Valerie May, then married, borrowed money from Defendant ABN AMRO Mortgage Group, Inc., and secured their promise to repay by mortgaging their condominium. Although both Michael and Valerie agreed to make monthly payments under the note, the note contemplated that those payments would leave a large balance, due upon maturity in seven years. Along with the note, Michael and Valerie signed an addendum, providing that if certain conditions were met at the time of maturity, they could refinance the loan instead of paying the balance. By the time that the note matured, however, Michael and Valerie had divorced. Under the judgment of divorce, Michael was awarded title to the condominium and agreed to hold Valerie harmless for her obligations under the note. So Michael attempted to complete the refinancing process by himself. Defendant CitiMortgage, Inc. (ABN AMRO Mortgage Group's successor through merger), maintained that it was necessary for Valerie to also sign the refinancing paperwork. As such, CitiMortgage refused to refinance the note. May thought that was a breach of their contract and so he filed this lawsuit.

Before the Court for resolution is CitiMortgage's motion for summary judgment. (For ease of reference, the Court will refer to both Defendants as "CitiMortgage.") Also before the Court is May's motion to amend his complaint to add a Fair Credit Reporting Act claim. The Court has been fully advised through briefing, and thus proceeds without oral argument. *See* E.D. Mich. LR 7.1(f)(2). As detailed below, the plain language of the addendum required both Valerie and Michael to sign paperwork to complete the refinancing process. Further, May's Fair Credit Reporting Act claim fails to state a claim for relief. As such, CitiMortgage's motion will be granted and May's denied.

## I.

The Court presents the events giving rise to this lawsuit from May's perspective with reasonable inferences drawn from the evidence in May's favor. *See Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 667 (6th Cir. 2006).

### A.

In July 2003, Michael May and his then-wife, Valerie May, borrowed $264,500 from CitiMortgage as evidenced by a promissory note ("Note"). (Dkt. 39, Jt. Exs., Ex. 1, Note.) Michael and Valerie secured their promise to repay the loan by granting CitiMortgage the right to foreclose on their condominium in the event of default ("Mortgage"). (Jt. Exs., Ex. 4, Mortgage at PID 568; *see also* Dkt. 30-1, Proposed Am. Compl. ¶ 38.) Under the Note, even if Michael and Valerie paid every monthly payment in full, over $200,000 in principal would remain outstanding by the maturity date. (*See* Note at PID 557; *See* Pl.'s Resp. Ex. F at PID 312.) The Note thus provided, "If, on August 1, 2010, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'Maturity Date.'" (Note at PID 557.) The signature blocks of both the Note and Mortgage identified each of Michael and Valerie as

"Borrowers." (Note at PID 559; Mortgage at PID 579.) The Mortgage additionally identified Michael and Valerie this way: "'Borrower' is Michael G. May and Valerie May, ~~Wife and Husband~~ *and wife*." (Mortgage at PID 566 (strikethrough in original, italics indicate hand-written correction in original).) Michael and Valerie each signed the Note and Mortgage. (Note at PID 559; Mortgage at PID 579.)

Given the "balloon" nature of the Note, Michael and Valerie each executed two additional documents in connection with the Note and Mortgage. Most relevant here is a document titled "Balloon Note Addendum (Conditional Right to Refinance)." (Jt. Exs., Ex. 2, Addendum.) As its name implies, the Addendum granted Michael and Valerie the right to "obtain a new loan" with a later maturity date should certain conditions be satisfied. Because May's argument stresses his satisfaction of these conditions, the Court reproduces them in some detail:

> 1. CONDITIONAL RIGHT TO REFINANCE
>
> At the Maturity Date of the Note and the Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of August 1, 2033, and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Section 2 and 5 below are met (the "Conditional Refinancing Option"). . . .
>
> 2. CONDITIONS TO OPTION
>
> If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (a) I must still be the owner of the Property subject to the Security Instrument (the "Property"); (b) I must be current in my monthly payments and cannot have been more than 30 days late of any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (c) the New Note Rate cannot be more than five percentage points above the Note Rate; and (d) I must make a written request to the Note Holder as provided in Section 5 below.

\* \* \*

> 5. EXERCISING THE CONDITIONAL REFINANCING OPTION . . . .
>
> If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate . . . . I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership. Before the Maturity Date, the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount, and a date, time, and place at which I must appear to sign any documents required to complete the required refinancing. . . .

(Addendum at PID 561.) Each of Michael and Valerie signed the Addendum as a "Borrower." (Addendum at 561.)

The second ancillary document, titled "Balloon Rider (Conditional Right to Refinance)" sets forth identical conditions—the Rider is to the Mortgage as the Addendum is to the Note. (*See generally*, Jt. Exs. Ex. 3, Rider.) Each of Michael and Valerie signed the Rider as a "Borrower." (Rider at PID 564.)

**B.**

In April 2009, Michael and Valerie divorced. (*See* Dkt. 31, Pl.'s Resp. Ex. B, Divorce J.) Regarding their home, the Consent Judgment of Divorce assigned Michael title and provided that he would indemnify Valerie from her "obligations" under the mortgage:

> IT IS FURTHER ORDERED that Michael G. May is awarded as his sole and separate property, free and clear of any interest, right, title or claim of Valerie May, the following: . . .
>
> The marital residence located [on] . . . N. River Woods Drive, Canton, Michigan 48188, MI, subject to the mortgage and equity line of credit thereon. Michael G. May shall be responsible for the timely payment of the mortgage and home equity lines of credit monthly statements and shall indemnify and hold Valerie May harmless from obligations. Valerie May shall execute and deliver to Michael G. May a recordable Quit Claim Deed transferring her interest in the marital residence to him; . . . .

(Divorce J. at PID 367.)

## C.

In June 2010, CitiMortgage sent May a letter asking whether he intended to refinance the loan. (Pl.'s Resp. Ex. I, May Aff. ¶ 4.) May informed CitiMortgage that he intended to refinance the loan. (May Aff. ¶¶ 5–6.) And, on June 24, May "sent to CitiMortgage the second set of documentation setting forth [his] intentions to exercise the option under the" Note. (May Aff. ¶ 7.)

"Thereafter" (the timing is unclear), May received a balloon note modification agreement from CitiMortgage. (May Aff. ¶ 8.) Apparently, the agreement identified Michael and Valerie as married, which led May to contact Susan McNamara at CitiMortgage to inform her of the divorce and his sole ownership of the property. (*See* May Aff. ¶ 10.) McNamara then prepared a second balloon note modification agreement, but "it still identified the Borrowers as Michael G. May, a married man, and Valerie May, a married woman." (May. Aff. ¶ 12.)

On July 27, 2010, May faxed CitiMortgage a copy of the Consent Judgment of Divorce. (*See* Pl.'s Resp. Ex. D.) The fax was to McNamara's attention and the cover letter stated, "Here is a copy of my divorce decree, [i]f you have any questions or concerns I can be reached at . . . ." (Pl.'s Resp. Ex. D. at PID 436–37.) The record does not reflect what CitiMortgage did in response to this fax.

On August 1, 2010, the Note matured and the outstanding loan balance became due. (*See* Note at PID 557.) The unpaid principal was approximately $221,000. (*See* Pl.'s Resp. Ex. E at PID 440.)

On August 18, 2010, May sent another fax to CitiMortgage, this one directed to a "Marilyn Cashman." (Pl.'s Resp. Ex. D at PID 438.) May's cover letter stated, "Here is a copy of the quick Claim Deed [*sic*] and a copy of my divorce decree as requested to start my

5

modification. On 8/18/2010 I will be out of the country until Sep 1, 2010 during this time I will not have phone access." (*Id.*)

A week later, CitiMortgage wrote a letter to both Michael and Valerie and sent it to the River Woods Drive address. (Pl.'s Resp. Ex. E PID 440.) The August 25 letter stated,

> We have processed your election to reset your balloon mortgage in accordance with your mortgage documents. This letter will provide you with the information and instructions you need to reset your mortgage. We have enclosed two originals of a Balloon Loan Modification document. Instruction for completing these documents appear on the next page
>
> * * *
>
> What you must do to reset your mortgage
>
> 1. All Borrowers listed on the enclosed Balloon Loan Modification must date and sign copies of the Document and the signatures must be notarized. Sign your name exactly as it is typed. All signatures must be witnessed. . . .
>
> 2. Return both of the signed and notarized Balloon Loan Modifications and a check made payable to CitiMortgage, Inc. in the amount of $1,075.64 . . . for the transaction costs and the accrued interest and Escrow payment to the following address so that we receive the documents and the checks no later than 09/08/10 . . . .
>
> * * *
>
> What we do after we receive the documents and your check
>
> 1. We verify that both of the Balloon Loan Modifications have been properly signed, dated and notarized.
>
> * * *
>
> Should you decide not to reset your mortgage, you must pay your mortgage in full on or before 09/08/10. . . . Also, on the top of one of the Balloon Loan Modifications, please [1] [w]rite in the following words: "I/We do not want to reset my/our mortgage"

(Pl.'s Resp. Ex. E at PID 440–42.)

The document referred to in the letter, titled "Balloon Loan Modification (Pursuant to the Terms of the Balloon Note Addendum and Balloon Rider)" ("Loan Modification Document"), identified both Michael and Valerie as "Borrower":

> TWO ORIGINAL BALLOON LOAN MODIFICATIONS MUST BE EXECUTED BY THE BORROWER . . .
>
> This Balloon Loan Modification ("Modification"), entered into effective as of the 1st day of August, 2010, between Michael G. May, a single person, and Valerie May, a single person ("Borrower") and CitiMortgage, Inc. ("Lender"), amends and supplements (1) the Mortgage[] . . . dated 07/09/03[;] . . . and . . . the Balloon Note bearing the same date . . . .

(Jt. Exs. Ex. 7, Loan Modification Doc. at PID 582.) The Loan Modification Document further provided, "The Borrower promises to make monthly payments of principal and interest of U.S. $1,334.05, beginning on the 1st day of September, 2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full." (Loan Modification Doc. at PID 583.) The Loan Modification Document included a space for "Michael G. May" as "Borrower" to sign and a space for "Valerie May" as "Borrower" to sign. (*Id.*) It also included a space for the signature of "Colleen Nentwig," a CitiMortgage vice president. (*Id.*)

On or around September 3, 2010, May sent the Loan Modification Document back to CitiMortgage. (*See* Pl.'s Resp. Ex. C at PID 434; Compl. ¶ 10.) The Loan Modification Document included his signature. (Pl.'s Resp. Ex. C at PID 434.) But it did not include Valerie's. (*Id.*) And Nentwig (or anyone else at CitiMortgage) never signed the Loan Modification Document. (*See* Defs.' Mot. Ex. 4, Schneider Aff. ¶ 11.) Three days later, May wrote a check to CitiMortgage to cover the refinancing fees referenced in the August 25, 2010 letter. (Pl.'s Resp. Ex. F.)

May asserts that CitiMortgage "subsequently 'lost' the documents [he] was asked to sign and return." (Compl. ¶ 11; *see also* Dkt. 30-1, Proposed Am. Compl. ¶ 13.) Nonetheless, on

7

September 15, 2010, CitiMortgage wrote another letter to Michael and Valerie and sent it to May's River Woods address. (*See* Def.'s Mot. Ex. 6.) The letter informed,

> In order to move forward with the reset modification process, additional action on your part is required as noted below.
>
> [x] Valerie May must also sign the Borrower Intention Statement/Request form. Please have this individual sign and resubmit the form.
>
> [x] Valerie May must also sign the Balloon Loan Modification documents or submit a Release of Liability.
>
> [] Notary page is incorrect/incomplete. Please correct/complete and return the Modification documents.
>
> If we do not receive the requested documents by 09/29/10, then we cannot reset your mortgage and you will be required to pay your mortgage in full on or before 09/29/10.

(Defs.' Mot. Ex. 6.)

At some point (apparently after this September 15 letter) CitiMortgage responded to May's "recent inquiry regarding the process to remove one or more of the original borrowers from your mortgage loan." (Defs.' Mot. Ex. 3.) CitiMortgage's letter explained, "[t]o initiate [the Release of Liability] process, you must complete the enclosed application package." (*Id.*) May submitted the enclosed "Release of Liability" application to CitiMortgage sometime after November 8, 2010. (*See* Pl.'s Resp. at 8 & Ex. G.) A copy of the application is not in the record. A $900 fee acknowledgment form is in the record. It is signed only by Michael. A line provided for Valerie's signature is blank. (Pl.'s Resp. Ex. G at PID 447.)

May asserts that CitiMortgage lost his Release of Liability application and the accompanying $900 fee. (Compl. ¶¶ 11, 16; *see also* Proposed Am. Comp. ¶ 13.) He says that CitiMortgage employees have told him that his "reset application including the check for

8

$900.00 was 'sitting in the drawer' of an employee of Defendant CitiMortgage, rather than being processed[.]" (Proposed Am. Compl. ¶ 15.)

In January 2011, May wrote a letter to Vikram Pandit at CitiMortgage. It begins, "I need your Help! I have been a customer with CitiMortgage for 7 years and I have never missed a mortgage payment. I am so frustrated with the way my account is being handled. Without going into detail please look up my account and you will understand what I have been going through . . . ." (Pl.'s Resp. Ex. H.) May then detailed his efforts to refinance his loan. (*Id.*)

May avers that even after the August 2010 maturity date of the Note, he continued to make monthly mortgage payments to CitiMortgage totaling approximately $13,000. (Pl.'s Resp. at 8.) CitiMortgage either held the payments but failed to apply them to the loan balance, or used them to pay for property insurance that May was fully capable of paying on his own. (Pl.'s Resp. at 8; Proposed Am. Compl. ¶ 20.)

In August 2012, CitiMortgage offered May, individually, a loan modification. (Proposed Am. Compl. ¶¶ 41–42.) According to May, the modification contemplated a principal balance approximately $23,000 more than that the principal balance on the Note at the time of maturity. (*Id.* ¶ 42.) Further, May "fundamentally objected" to a loan modification in part because "it was predicated upon [him] . . . being in default[.]" (*Id.* ¶ 43.)

In September 2012, May filed this lawsuit.

### D.

May's Complaint asserts that CitiMortgage is liable for breach of contract. (*See* Compl. ¶ 16.) His theories are several. Primarily, it appears, May maintains that CitiMortgage is in breach because it failed to refinance his loan even though he met all of the refinance conditions set forth in the Addendum (and Rider). (*See* Compl. ¶ 16; Pl.'s Resp. at 12–14.) The Complaint

9

further alleges that CitiMortgage is in breach because it "los[t]" May's paperwork, which he submitted twice, and lost the Release of Liability application and the accompanying $900 payment. (Compl. ¶ 16; Pl.'s Resp at 14–17.) May further claims that CitiMortgage breached its contractual obligations to him by returning his mortgage payments, forcing him to attend credit counseling, attempting to charge him a higher interest rate, adding $23,000 to the outstanding principal, and failing to apply over $13,000 in payments to the loan balance. (Compl. ¶ 16.)

In March 2013, CitiMortgage sought to join Valerie as a necessary party. (Dkt. 10.) The district judge to whom this case was previously assigned denied the motion. (Dkt. 22.)

In May 2014, CitiMortgage moved for summary judgment. (Dkt. 29.)

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As noted at the outset, in deciding if CitiMortgage has carried this burden, the Court views the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-movant, here May. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.

Although May's Complaint and summary-judgment response could be clearer, it appears that May's breach of contract claim is premised on the Addendum. May says he met every condition set forth in the Addendum and "did all he could to perfect his right to reset his mortgage balance under the Balloon Note Addendum." (Pl.'s Resp. at 11–12.) In contrast, says May, CitiMortgage negligently failed to process both the Loan Modification Document and the Release of Liability application. (Pl.'s Resp. at 15–17.) May says, "No matter what [I] did,

10

[CitiMortgage] did everything it could to impede the implementation of the Balloon Loan Modification." (Pl.'s Resp. at 18.)

CitiMortgage responds that it had no obligation to refinance May's loan "where a necessary party, Ms. May, had not signed the document. The [Loan Modification Document] involved a reset of the 2003 Note, which required signatures by all parties to the Note, including M[s.] May." (Defs.' Mot. at 8.)

The Court agrees with CitiMortgage. Although May repeatedly stresses that he met the conditions set forth in the Addendum, he overlooks critical language in that agreement requiring Valerie's signature. In particular, the Addendum said,

> 5. EXERCISING THE CONDITIONAL REFINANCING OPTION . . . .
>
> If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate . . . . I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership. Before the Maturity Date, the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount, and *a date, time, and place at which I must appear to sign any documents required to complete the required refinancing. . . .*

(Addendum at PID 561 (emphasis added).) The emphasized language unambiguously provides that to "complete the require refinancing," there may be documents that must be signed. And "I" undoubtedly refers to "Borrower" and the Addendum identifies both Michael and Valerie as a "Borrower." To prevail, May would have to show that "I" meant only him, not Valerie. But this is not a plausible reading of the Addendum. *See Hastings Mut. Ins. Co. v. Safety King, Inc.*, 778 N.W.2d 275, 281 (Mich. Ct. App. 2009) ("[C]ontracts are to be interpreted to avoid absurd or unreasonable conditions and results").

That the Addendum required Valerie to sign documents to complete the refinancing is entirely consistent with CitiMortgage's position during the refinance process. The August 25,

2010 letter that CitiMortgage wrote to both Michael and Valerie provided that "All Borrowers listed on the enclosed Balloon Loan Modification must date and sign copies of the Document and the signatures must be notarized." (Pl.'s Resp. Ex. E at PID 441.) The enclosed Loan Modification Document provided that it had to be signed by the "Borrower" and defined that term as "Michael G. May, a single person, and Valerie May, a single person." (Loan Modification Doc. at PID 582.) The signature page of the Loan Modification Document included a place for a CitiMortgage representative, Michael, *and* Valerie to sign. (Loan Modification Doc. at 582.) When only May signed the Loan Modification Document, CitiMortgage sent May a letter informing him that "Valerie May must also sign the Balloon Loan Modification documents or submit a Release of Liability." (Defs.' Mot. Ex. 6.) CitiMortgage subsequently sent May a Release of Liability application. Although a copy of the application is not in the record, nothing suggests that Valerie ever signed it. To the contrary, the $900 fee acknowledgment form is signed only by Michael despite a spot for Valerie to sign. (Pl.'s Resp. Ex. G at PID 447.)

May appears to have two rebuttals to the conclusion that he and CitiMortgage did not reach an agreement to refinance the terms of the Note. First, May stresses that, at the time he sought refinancing, he was divorced, held title to the condominium in his name only, agreed to indemnify and hold Valerie harmless for her obligations under the Note, and, on more than one occasion, proved these facts to CitiMortgage. But all of this misses the point. May and Valerie each signed the Note. (Note at PID 559.) And the Note provided,

> If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. *Any person who takes over these obligations*, including the obligations of a guarantor, surety or endorser of this Note, is *also* obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under the Note against each person individually or

>against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Note.

(Note at PID 558 (emphases added).) May does not explain why CitiMortgage's right to hold either Michael *or* Valerie responsible for their agreement to repay the loan should be stripped by an agreement between only Michael and Valerie. He offers no explanation for why, under the quoted language, CitiMortgage would only be able to seek payment from Michael even if, under a hypothetical divorce decree, all the marital property went to Valerie. More importantly, the plain language of the Addendum required both Michael and Valerie to sign documents to complete the refinancing irrespective of their marital status. The Mays' agreement for Michael to take on Valerie's responsibilities under the Note does not rewrite a term agreed upon by Michael, Valerie, *and CitiMortgage*, i.e., that each of Michael and Valerie may be required to sign documents to "complete the require refinancing." (*See* Addendum at PID 561.)

May also stresses that CitiMortgage was negligent in processing the paperwork to refinance and to release Valerie from the Note. Even so, May has not shown that CitiMortgage's negligence caused Valerie not to sign the required documents. *See Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993) (providing that a "requisite element[] of a negligence cause of action" is that "the breach was a proximate cause of the damages suffered"). That is, even if CitiMortgage lost May's paperwork or it is sitting in someone's desk drawer, May has not shown that absent those negligent acts, he would have obtained the refinancing. And, as just explained, he cannot make this showing because he has not produced evidence that he complied with the Addendum's requirement for Valerie to sign required refinance documents.

In short, the Addendum is clear: "Before the Maturity Date, the Note Holder will advise me [Michael/Valerie] of the new interest rate (the New Note Rate), new monthly payment amount, and a date, time, and place at which *I [Michael/Valerie] must appear to sign any*

*documents required to complete the required refinancing.*" And where the language is unambiguous, the Court applies the plain language without aid of a jury. *See In re Smith Trust*, 745 N.W.2d 754, 757–58 (Mich. 2008) ("[I]t is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." (footnotes omitted)). That plain language required Valerie's signature. It follows that May's breach of contract claim fails as a matter of law.

**B.**

May's Complaint mentions "promissory estoppel"—exactly once and in the relief section. (Compl. at PID 13.) May does not mention that legal theory in his summary-judgment response. This is despite CitiMortgage's assertion in its motion that the Complaint does not plead a promissory estoppel claim and, even if it had, it is barred under Michigan's statute of frauds. (Defs.' Mot. at 6.) May's proposed amended complaint also does not mention promissory estoppel. Given every sign from May that he has elected to abandon a promissory estoppel claim (if there was one in the first place), the Court finds the claim to be forfeited. *Cf. United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]t is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").[1]

---

[1] True, the district judge to whom this case was previously assigned said, "The court notes that plaintiff's claims are brought under theories of promissory estoppel and breach of contract for the reinstatement of the balloon loan Modification Agreement. For instance, plaintiff claims he reasonably relied on the Yoho letter stating 'Citimortgage is not requiring that Valerie May sign the modification' in forming his expectation that he could refinance the loan without his ex-wife." (Dkt. 22, Order on Mot. for Joinder at 5.) The Court has examined the one page of

14

### III.

After discovery—and after CitiMortgage moved for summary judgment—May filed a motion to amend his Complaint. (Dkt. 30, Pl.'s Mot. to Amend.) The proposed amended complaint does not provide material information about the refinancing process not accounted for above. (*See* Proposed Am. Compl. ¶¶ 1–25.) But it does attempt to plead a new cause of action: that CitiMortgage violated the Fair Credit Reporting Act ("FCRA"). May's theory is that CitiMortgage falsely reported to credit agencies that he is in default "or in a Mortgage foreclosure situation," (*id.* ¶ 21), and that this false information has, among other things, lowered his credit rating and made it difficult for him to obtain financing both from CitiMortgage and other lenders, (*id.* ¶¶ 23, 34–35).

Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend should be "freely given when justice so requires." But a court may deny leave based on undue delay, bad faith, dilatory motive, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Futility is assessed under the Federal Rule of Civil Procedure 12(b)(6) standards. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000).

Although an argument could be made for undue delay resulting in prejudice (and CitiMortgage has made one (Dkt. 33, Defs.' Resp. to Mot. to Amend at 7–9)), the Court does not address any such argument because it agrees with CitiMortgage that May's FCRA claim is futile.

---

the Yoho letter—which was not part of the summary-judgment briefing—and concludes that the letter was written sometime around October 2012 in apparent response to the August 2012 loan modification that CitiMortgage offered to May, individually. (*See* Proposed Am. Compl. ¶ 41, Ex. L; Dkt. 13, Pl.'s Resp. to Mot. for Joinder, Ex. 2 at PID 150.) But May has "fundamentally objected" to this modification as it would require him to admit default under the Note. (Proposed Am. Compl. ¶ 43.) The Court, therefore, does not believe that May intended the Yoho letter to be a basis for a promissory estoppel claim.

May's proposed amended complaint does not specify a provision of the FCRA that CitiMortgage allegedly violated. Subsection 1681-s2(a) of the Act prohibits transmitting false information to a credit reporting agency; but there is no private right of action under that subsection. *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012). Defendants have pointed this out to May (*see* Defs.' Resp. at 4), and, in response, May points out that the court in *Boggio* found a private right of action under § 1681s-2(b), (Dkt. 36, Pl.'s Reply to Defs.' Resp. to Mot. to Amend at 5).

But May has not pled a cause of action under § 1681s-2(b). As an initial matter, it appears that May has only alleged that he contacted CitiMortgage (via the letter to Vikram Pandit) about the allegedly false reporting. (Proposed Am. Compl. ¶ 37; *see also* Pl.'s Reply at 4–5.) But to state a cause of action under § 1681s-2(b), May needed to plead that he contacted the credit reporting agency. *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) ("Brown's allegations that he directly informed Citibank and GEMB did not obligate them to investigate. . . . Directly contacting the furnisher of credit information does not actuate the furnisher's obligation to investigate a complaint." (citation omitted)). It is true that May alleges that CitiMortgage "knew full well [that] Plaintiff was disputing the position being taken on the credit reports of Plaintiff with all credit reporting agencies." (Proposed Am. Compl. ¶ 46.) But this conclusory allegation—failing to identify which agencies were contacted, when they were contacted, or what was said—does not permit the plausible inference that CitiMortgage is liable under § 1681s-2(b). *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). And even if it did, May makes no allegation that any credit reporting agency ever contacted CitiMortgage about the dispute. *Boggio*, 696 F.3d at 615–16 ("In light of § 1681s–2(c)'s express limits, consumers may step in to enforce their rights only after a furnisher has received proper notice of a dispute from a

CRA."); *Brown*, 507 F. App'x at 547 ("A private cause of action against a furnisher of information does not arise until a consumer reporting agency provides proper notice of a dispute.").

May's Fair Credit Reporting Act claim is thus futile.

### IV.

For the reasons stated, Defendants ABN AMRO Mortgage Group, Inc. and CitiMortgage, Inc.'s Motion for Summary Judgment (Dkt. 29) is GRANTED and Plaintiff Michael May's Motion Seeking Court Approval to File First Amended Complaint (Dkt. 30) is DENIED. A separate judgment dismissing the Complaint will follow.

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated: December 17, 2014

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on December 17, 2014.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson